FILED

2015 Jun-12  PM 02:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ALABAMA
### MIDDLE DIVISION

| | | |
|---|---|---|
| **DEBRA GARRIS ELLIS,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 4:14-CV-0224-RDP** |
| | } | |
| **CAROLYN W. COLVIN,** | } | |
| **COMMISSIONER OF SOCIAL** | } | |
| **SECURITY,** | } | |
| | } | |
| **Defendant.** | } | |

### MEMORANDUM OF DECISION

Plaintiff Debra Garris Ellis brings this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), seeking review of the decision by the Commissioner of the Social Security Administration ("Commissioner") denying her application for a period of disability and Supplemental Security Income ("SSI") benefits under Title XVI of the Act. Based upon the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed. *See* 42 U.S.C. §§ 405(g), 1383(c)(3).

I.      **Proceedings Below**

A.      **Procedural History**

Plaintiff protectively filed an application for a period of disability and SSI on January 26, 2011, alleging that she became disabled as of January 1, 2007. (Tr. 114, 127). After Plaintiff's applications were initially denied, she requested a hearing. (Tr. 60-64, 67-68). The hearing took place on July 26, 2012, before Administrative Law Judge ("ALJ") George W. Merchant. (Tr. 30-57). In his decision dated September 27, 2012, the ALJ determined that Plaintiff had not been under a

disability, as defined in the Act, at any time from the date of her application, January 26, 2011, through the date of the decision.  (Tr. 23).  When the Appeals Council denied Plaintiff's request for review, the ALJ's decision became the final decision of the Commissioner.  This appeal followed. (Doc. # 1).

###### B.      Facts

As of the date of her July 2012 hearing, Plaintiff was 46-years old, having been born March 22, 1966.  (Tr. 33, 114).  She received a GED and obtained an Associate's Degree in information science technology.  (Tr. 43).  She last worked in the early 2000's as a housekeeper at a department store. (Tr. 33, 53).  Plaintiff stated she left the housekeeper job because it required a great deal of walking, standing, bending, and squatting, which she could not do.  (Tr. 33-34).  Plaintiff underwent knee surgery in October 2010 due to severe arthritis, and still has pain in her knee.  (Tr. 34). Because of that pain, Plaintiff estimates she can stand for fifteen to twenty minutes and sit for ten to fifteen minutes.  (Tr. 35, 44).  Due to her knee swelling, she has to lie down with her knee bent, which she does three to four hours per day.  (Tr. 36).  Plaintiff believes her knee is the main reason she is unable to work.  (Tr. 45).  Plaintiff also complains of pain in her back and hips.  (Tr. 36-37). She reports that her pain averages about an eight on a scale of one to ten, although she says medication helps somewhat.  (Tr. 37).  However, she also reports the medication makes her lightheaded, dizzy, and tired.  (Tr. 40).

Plaintiff also suffers from depression and anxiety.  (Tr. 37).  She does not like crowds; they make her nervous and cause her to have chest pains.  (Tr. 38).  Therefore, she estimates she leaves her house no more than two times per week.  (Tr. 38).  She also indicates she has trouble concentrating and remembering, and suffers from crying spells.  (Tr. 40, 41).

Plaintiff lives with her 18-year old daughter and a family friend who has moved in to help her with cooking, cleaning, and shopping. (Tr. 42, 48-49). The house where she lives is owned by her boyfriend, but he is gone six to eight weeks at a time. (Tr. 47). Sometimes she has to go to her room to be alone. (Tr. 43). She can drive short distances, and occasionally goes out to a club or to shoot pool with a friend just to get out of the house. (Tr. 45, 51). Also, she has started going to the library twice a week, as well. (Tr. 50).

Plaintiff's treating physician is Dr. Wendy Gomez. Her records reflect that Plaintiff has a fluctuating problem with back pain due to a motor vehicle accident in 1997. (Tr. 214). X-rays in August 2010 found degenerative joint disease in Plaintiff's right knee and scoliosis but no degenerative joint disease in her back. (Tr. 225, 237, 238). Plaintiff underwent arthroscopic surgery on her right knee in October 2010 for repair of a medial meniscal tear. (Tr. 201-05). Also, in October 2010, Dr. Gomez noted Plaintiff was suffering from depression with an onset one month prior. (Tr. 217). Symptoms included depressed mood, fatigue, loss of energy, panic attacks, and sleep disturbance. (Tr. 217).

Dr. Gomez's December 2010 record reflects that Plaintiff still complained of knee pain as well as back pain and chest discomfort following pulling and lifting furniture during a move. (Tr. 210-212). Those records also state that Plaintiff was alert and oriented, with "[n]o unusual anxiety or evidence of depression." (Tr. 212).

Plaintiff was sent for a consultative physical examination in March 2011. (Tr. 253). Plaintiff stated her main complaint was right knee pain, which had gradually worsened after her October 2010 surgery. (Tr. 253). Plaintiff could walk without assistance, sit comfortably, get on and off the exam table, and was able to take off and put on her shoes. (Tr. 254). Plaintiff was tender around her right

knee and diagnosed with severe right knee arthritis.  (Tr. 256).

Plaintiff also underwent a consultative psychological examination with Dr. Mary Arnold, Psy.D., in April 2011.  (Tr. 257).  Plaintiff reported to Dr. Arnold that the main reason she could not work was her knee.  (Tr. 257).  Although described as obese, Plaintiff's gait did not indicate pain or impairment.   (Tr. 258).   Plaintiff's reported activities included washing clothes, sweeping, vacuuming, shopping at local super markets and Walmart, and looking at Facebook, and playing computer games.  (Tr. 258-59).  Dr. Arnold assessed Plaintiff with adjustment disorder and assigned a Global Assessment of Functioning ("GAF") score of 60.[1]  (Tr. 259).

Also, in April 2011, Plaintiff began treatment at a mental health clinic.  Therapist records reflect Plaintiff suffered from Major Depressive Disorder, moderate, Generalized Anxiety Disorder, Social Phobia, and chronic pain.  (Tr. 400).  She was assigned a GAF score of 50.  (Tr. 400).  In these records, Plaintiff complained of worsening depression and anxiety symptoms.  (Tr. 396).  In June 2011 Plaintiff reported anxiety and audio hallucinations at night, along with paranoia after "friends stole her daughter's laptop."   (Tr. 390).  She thought her stress had increased due to an upcoming court hearing, denial of her Social Security disability claim, and financial difficulties.  (Tr. 388).  She reported increased depression in July 2011.  (Tr. 387).  Plaintiff was assigned a GAF score of 55 in August, September, October, and December 2011.  (Tr. 380. 382-384).  In January 2012, Plaintiff related she had pain in her chest which she thought might be panic attacks because it occurred when she was under a lot of stress or in a big crowd.  (Tr. 379).  Plaintiff's records through

---

[1] The GAF is a numeric scale intended to rate the psychological, social, and occupational functioning of adults. Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32, 34 (4th ed.2000). A GAF score of 51-60 translates to "Moderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (*e.g.* few friends, conflicts with peers or co-workers)." DSM-IV-TR, p. 34.  In the Fifth edition, released in 2013, the American Psychiatric Association discontinued the use of GAF scores.

June 2012 indicate that she had made progress toward her goals, that her depression level was low, and her bigger issue was stress due to problems with her daughter and her boyfriend. (Tr. 375-77).

Dr. Gomez's March 2011 medical record reflects Plaintiff complained of pain in her right knee radiating to her right foot. (Tr. 353). She also complained of instability, limping, spasms, and swelling and weakness in her knee, as well as hip and back pain. (Tr. 353). In June 2011 Plaintiff again complained of hip and back pain. (Tr. 345). Due to ongoing problems with her knee, Plaintiff underwent a total knee replacement in August 2011. (Tr. 321, 324-26, 434-43, 478-505). Follow up in September 2011 noted Plaintiff to be "doing great." (Tr. 320). Physical therapy records in October 2011 reflect Plaintiff reported her pain as generally ranging from three or four out of ten, and in November one or two out of ten. (Tr. 572-78, 586). In January 2012 Plaintiff was noted to be "doing fine. She still is having some night pain." (Tr. 318). A March 2012 office note indicates that Plaintiff complained of ongoing pain in her right knee, but the hardware was noted to be in good position. (Tr. 317).

Plaintiff's medical records also reveal that she returned to Dr. Gomez in June 2012 complaining of worsening hip and back pain. (Tr. 335). Dr. Gomez noted tenderness in Plaintiff's sacroiliac joints bilaterally. (Tr. 336).

In July 2012, Dr. Marino S. Tulao completed a Medical Source Statement (Mental) on Plaintiff's behalf. (Tr. 698). According to Dr. Tulao, Plaintiff would have marked limitations in two areas: (1) her ability to interact appropriately with the general public, get along with coworkers and peers, maintain attention, and sustain a routine (Tr. 698-99, 702); and (2) her ability to sustain a routine, complete a normal work day, respond appropriately to supervision and respond to customary work pressures (Tr. 698-700). Dr. Tulao also opined Plaintiff would have moderate limitations in

activities such as asking a simple question, understanding, remembering and carrying out simple or complex instructions, perform repetitive tasks, and maintain regular attendance. (Tr. 698-99). An unsigned questionnaire also assessed that Plaintiff had moderately severe depression, resulting in her being unable to sustain work on a regular basis. (Tr. 704-05).

With this background, the ALJ asked the vocational expert ("VE") at Plaintiff's hearing to assume that Plaintiff had the residual functional capacity ("RFC") to perform light work, with additional limitations of occasional pushing, pulling or operating foot controls with her right leg, frequent climbing of ramps and stairs, but no ropes, ladders or scaffolds, frequent balancing and stooping but no kneeling or crawling, no hazardous machinery or unprotected heights, and no concentrated exposure to temperature extremes. (Tr. 53). The VE testified that, with such limitations, Plaintiff could perform jobs such as light cleaning, retail sales helper, and ticket seller. (Tr. 53). Other jobs would fit these limitations at the sedentary level. (Tr. 54). Within the light work range as limited by the ALJ, with additional non-exertional limitations of no detailed or complex instructions, no more than occasional decision making, no more than occasional changes in work setting, and no more than occasional contact with the public, co-workers and supervisors, the retail sales job would be eliminated, but the cleaning job would remain. (Tr. 54-55). Other jobs within these limitations would include general office clerk and machine packer. (Tr. 55). At the sedentary level with the non-exertional limitations added, the jobs of order clerk and production assemblers would remain as well. (Tr. 54-55).

## C.    ALJ Decision

The regulations require that the Commissioner follow a five-step sequential evaluation to determine whether a claimant is eligible for a period of disability. *See* 20 C.F.R. § 416.920; *Bowen*

*v. City of New York*, 476 U.S. 467, 470 (1986). "[A]n individual shall be considered to be disabled for purposes of [determining eligibility for benefits] if [s]he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If the claimant is engaged in substantial gainful activity, the Commissioner will find that the claimant is not disabled, regardless of the claimant's medical condition or age, education, and work experience. 20 C.F.R. § 416.920(a)(4)(I). The ALJ found that Plaintiff had not engaged in substantial gainful activity since her protective filing date. (Tr. 12).

At step two, the Commissioner must determine whether the claimant suffers from a severe impairment or combination of impairments that significantly limit the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 416.920(a)(4)(ii). "[A]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *see also* 20 C.F.R. § 416.921(a). A claimant may be found disabled based on a combination of impairments even though none of the individual impairments alone are disabling. *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1985); *see also* 20 C.F.R. § 416.923. The ALJ found that Plaintiff had the following severe impairments: "degenerative disk disease of the thoracic and lumbar spine, obesity, depression, anxiety, arthritis, and status post right total knee arthroplasty." (Tr. 12).

If the claimant has a severe impairment, at step three of the analysis the Commissioner must determine whether the claimant's impairment meets the duration requirement and whether it is equivalent to any one of the listed impairments in 20 C.F.R. Part 404, Appendix 1.  20 C.F.R. § 416.920(a)(4)(iii), (d)-(e).  If the claimant's impairment meets or equals a Listing, the Commissioner must find the claimant disabled, regardless of age, education, and work experience.  20 C.F.R. § 416.920(d).  The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any Listing. (Tr. 13.)

If the impairment does not meet or equal the criteria of any Listing, the claimant must prove that her impairment prevents her from performing her past relevant work.  *See* 20 C.F.R. § 416.920(a)(4)(iv), (f).  At step four, the Commissioner "will first compare [the Commission's] assessment of the claimant's residual functional capacity with the physical and mental demands of the claimant's past relevant work."  20 C.F.R. § 416.960(b).  The ALJ found that Plaintiff has the residual functional capacity to:

> perform light work as defined in 20 C.F.R. § 416.967(b), with the following clarifications or deviations. [Plaintiff] can lift and/or carry up to twenty pounds occasionally and up to ten pounds frequently.  She can sit for up to six hours in an eight-hour workday and stand and/or walk for up to six hours in an eight-hour workday.  She can push and/or pull with both of her upper extremities and with her left lower extremity, using the same weight restrictions shown above for lifting and/or carrying. She can only occasionally push or pull with her right lower extremity.  She can frequently balance, crouch and climb ramps or stairs.  She should, however, avoid kneeling or crawling, as well as climbing ladders, ropes or scaffolds. The claimant should also avoid concentrated exposure to extreme heat and cold, humidity and excessive vibration.  She should also avoid work involving dangerous or moving machinery and unprotected heights. [Plaintiff] can remember, understand and carry out simple, but not detailed or complex, instructions.  She requires a work setting with no more than occasional decision-making. [Plaintiff] can adapt to changes in the work setting so long as they are gradually introduced and well explained. [Plaintiff] would perform best in an environment requiring only occasional contact with co-workers, the general public and supervisors, as well in an

environment requiring no tandem tasks.

(Tr. 14-15).  The ALJ also determined that Plaintiff had no past relevant work.  (Tr. 21).

At the fifth and final step of the analysis, if the claimant establishes that she is unable to

perform her past relevant work, the Commissioner must show that the claimant -- in light of her

RFC, age, education, and work experience -- is capable of performing other work that exists in

substantial numbers in the national economy. 20 C.F.R. § 416.960(c)(1).  If the claimant is not

capable of performing such other work, the Commissioner must find the claimant is disabled. 20

C.F.R. § 416.920(g).

The ALJ asked the VE whether jobs existed in the national economy for someone of

Plaintiff's age, education, work experience, and RFC.  (Tr. 53-55).  Based on the testimony thus

elicited, the ALJ determined jobs exist in the national economy that Plaintiff could perform.  (Tr.

22).

## II.     Plaintiff's Argument for Remand or Reversal

Plaintiff seeks reversal (or remand) of the ALJ's decision based on the argument that the ALJ

failed to give appropriate weight to the opinion of her treating source for her depression.  (Doc. # 12

at 6).

## III.     Standard of Review

Judicial review of disability claims under the Act is limited to whether the Commissioner's

decision is supported by substantial evidence and whether the correct legal standards were applied.

42 U.S.C. §§ 405(g), 1631(c)(3); *Wilson v. Barnhart*, 284 F.3d 1219, 1529 (11th Cir. 2002).

"Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant

evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth*

*v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's factual findings are conclusive when supported by substantial evidence. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). If supported by substantial evidence, the Commissioner's factual findings must be affirmed, even if the record preponderates against the Commissioner's findings. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004). Legal standards are reviewed *de novo*. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007). "[N]o ... presumption of validity attaches to the [Commissioner's] conclusions of law." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

## IV. Discussion

### A. The ALJ Gave the Appropriate Weight to the Opinion of Plaintiff's Treating Source for Her Depression

Eleventh Circuit law is well-established that an ALJ must give the opinion of a treating physician "substantial or considerable weight" unless "good cause" is shown to the contrary. *See e.g., Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011); *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004); *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (stating the ALJ may reject the opinion of any physician if the evidence supports a contrary conclusion). In assessing medical evidence, an ALJ is required to state with particularity the weight given to the different medical opinions and state the reasons for those assignments. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987). However, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision" enables the district court "to conclude that the ALJ considered [Plaintiff's] medical condition as a whole." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (quotations and alterations omitted).

As noted by the ALJ, during her hearing Plaintiff testified her most disabling impairment was her knee pain.  (Tr. 15).  However, in this appeal, Plaintiff challenges only the weight accorded to the opinion of Dr. Tulao as a treating physician, regarding her depressive symptoms.  (Doc. #12 at 6).  The Commissioner responds that Plaintiff's argument is premised on the presumption that Dr. Tulao is entitled to the weight afforded a treating physician, but is not a treating physician.  (Doc. #14 at 6).  Rather, as the ALJ noted, Dr. Tulao saw Plaintiff only four times from April 2011 until June 2012, as her therapy sessions were conducted by counselors and therapists.  (Tr. 18).  The ALJ found that, despite Dr. Tulao's opinion that Plaintiff had marked limitations in functioning in numerous areas, the treatment records supported a finding of no more than moderate impairments.  (Tr. 20).  Dr. Tulao's opinions (as set out in the Medical Source Statements and other documents he completed on July 26, 2012) were given little weight by the ALJ because he found they were inconsistent with his own treatment notes (that cover a span of more than twelve months) and also inconsistent with other record evidence.  Additionally, from April 1, 2011, through June 13, 2012, Plaintiff was evaluated by Dr. Tulao on only four occasions.  Her GAF scores throughout the treatment period were in the mid 50's, indicating the presence of only moderate, and not "marked," symptoms.  Dr. Tulao's treatment notes, however, were accorded great weight.  (Tr. 21).

The court finds the evaluation of Dr. Tulao's opinions by the ALJ is in accordance with the direction of 20 C.F.R. § 416.902, which states in relevant part:

> We may consider an acceptable medical source who has treated or evaluated a claimant only a few times or only after long intervals (*e.g.*, twice a year) to be a claimant's treating source if the nature and frequency of the treatment or evaluation is typical for the claimant's condition(s). We will not consider an acceptable medical source to be a claimant's treating source if the claimant's relationship with the source is not based on the claimant's medical need for treatment or evaluation, but solely on the claimant's need to obtain a report in support of the claimant's claim for disability.

> In such a case, we will consider the acceptable medical source to be a non-treating
> source.

20 C.F.R. § 416.902.  The ALJ recognized the extent of the treatment relationship when he noted

Dr. Tulao had seen Plaintiff approximately four times over a one-year period.  (Tr. 18).  *See* 20

C.F.R. § 416.927(c)(2) (length and nature and extent of treatment relationship).  He also noted that

Dr. Tulao's opinion was based on a personal examination.  *See* 20 C.F.R. § 416.927(c)(1)

(examining relationship).  Although these factors would normally counsel in favor of carefully

weighing Dr. Tulao's opinions, the ALJ assigned those opinions little weight because they were

"completely inconsistent" with the CED's treatment notes, documentation that covered a period of

more than twelve months.  (Tr. 21, 375-400, 698-705).  *See* 20 C.F.R. § 416.927(c)(4) (consistency).

The ALJ noted that within the treatment notes, dated from April 2011 through June 2012, Plaintiff's

GAF scores were within the mid-50's, indicating moderate, not marked symptoms.  (Tr. 21, 375-77,

379-80, 382-83).

The ALJ also accorded some weight to the opinion of Dr. Mary Arnold, as her GAF

assessment was consistent with Plaintiff's mental health treatment notes.  (Tr. 21).  Plaintiff argues

that the ALJ erred in affording great weight to the treatments notes, but not the opinions, of Dr.

Tulao.  (Doc. # 12, at 8).  The court disagrees.  The ALJ carefully reviewed the treatment notes, and

found that they were more in line with the opinion of Dr. Arnold, as well as the GAF scores ranging

from 51-55 (which were repeatedly noted by therapists working under Dr. Tulao).  (*Id.*).

Finally, the ALJ noted internal inconsistencies with Dr. Tulao's opinions, as Dr. Tulao

indicated Plaintiff would have marked limitations in her ability to interact appropriately with

supervisors on one form (Tr. 700), but on a second form, noted she would have moderate limitations

in this area. (Tr. 19, 702). *See* 20 C.F.R. § 416.927(c)(4) (consistency). The ALJ also remarked on

Dr. Tulao's failure to respond to the question of whether Plaintiff was "permanently and totally

disabled." (Tr. 19, 705). *See* 20 C.F.R. § 416.927(c)(6) (other factors). The court finds there is

substantial evidence which supports the ALJ's determination that the treatment notes were

inconsistent with Dr. Tulao's opinion that Plaintiff's limitations were so extensive they precluded

all employment. And, such findings constitute "good cause" necessary to reject the opinions of a

treating physician, as required by Eleventh Circuit law. *Winschel*, 631 F.3d at 1179. *See also*

*Adams v. Comm'r of Soc. Sec.*, 586 Fed. Appx. 531, 534 (11th Cir. 2014) (ALJ's indication of

weight given to all physician assessments in the medical record sufficient to establish substantial

evidence supports ALJ's consideration of medical opinion.); *T.R.C. Ex rel. Boyd v. Comm'r of Soc.*

*Sec.*, 553 Fed. Appx. 914, 917 (11th Cir. 2014) (Court "cannot say that the ALJ erred in giving

'some' rather than 'substantial' weight to the opinions of the examiners" who "did not have any

'ongoing treatment relationship' with her sufficient to accord them status as treating physicians.");[2]

*Sharfarz*, 825 F.2d at 288 (ALJ may reject any medical opinion if the evidence supports a contrary

finding).

      **B.**      **The ALJ's Decision is Supported by Substantial Evidence and the ALJ Applied
the Correct Legal Standards**

Although, at least arguably, Plaintiff has not directly raised the issues, the court has

independently reviewed the records in this case to ensure that the ALJ's decision is in fact supported

by substantial evidence on the record as a whole. In addition, the court has reviewed the ALJ's

decision to ensure that the correct legal standards were applied. After careful review, the court

---

[2] Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

concludes that the ALJ's decision is supported by substantial evidence and the ALJ applied the correct legal standards in reaching his decision.

## V.      Conclusion

The court concludes that the ALJ's determination that Plaintiff was not disabled at any time through the date of the decision is supported by substantial evidence. Therefore, the Commissioner's final decision is due to be affirmed.  A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this ____12th____ day of June, 2015.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE